UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

IN RE:

WALLACE DONALD SMITH and
CAROL JEAN SMITH d/b/a SMITHS FARM

      Debtors                           CASE NO. 11-30577

                                         CHAPTER 12


AGRI-MAX FINANCIAL SERVICES, LP,

      Plaintiff

vs.                                                            Adv. Proc. No. 13-3004

SPRINGFIELD STATE BANK

      Defendant

**MEMORANDUM-OPINION**

       THIS ADVERSARY PROCEEDING comes before the Court upon Plaintiff's Motion for Summary Judgment. Plaintiff seeks an Order from the Court concluding that Plaintiff's security interest in the proceeds of sale of certain livestock has priority over Defendant's security interest in such proceeds. Defendant objects and seeks an Order concluding that its security interest has priority. As discussed below, the Court concludes that Plaintiff is entitled to summary judgment as a matter of law.

       This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2)(A) and (K).

Undisputed Facts

       Plaintiff has a claim against Debtors which, as of the petition date, totaled $481,452.52

("Plaintiff's Claim"). Defendant has a claim against Debtors which, as of the petition date, totaled $73,519.24 ("Defendant's Claim").

On the petition date, Debtors owned, among other things, eighty-eight cows and heifers and one bull, for a total of 89 head of cattle (the "Cattle"). Plaintiff asserts that Plaintiff's Claim was secured at that time by all of the Cattle by virtue of a security interest granted by Security Agreement executed by Debtors in favor of Plaintiff on April 7, 2007 (the "Agri-Max Security Agreement"), which was perfected by the filing of a UCC financing statement on August 23, 2007 (the "Agri-Max Financing Statement"). The Agri-Max Security Agreement grants a security interest in "[a]ll assets, including, but not limited to, all now existing and after acquired ... farm products,... livestock,... including, but not limited to: cows and replacement young stock of all ages and breeds,...." Similarly, the Agri-Max Financing Statement describes Plaintiff's collateral as "[a]ll assets, including, but not limted to, all now existing and after acquired ... farm products,... livestock,... including, but not limited to: cows and replacement young stock of all ages and breeds,...."

Defendant asserts that Defendant's Claim was secured at the petition date by forty-five head of the Cattle by virtue of a security interest granted by three promissory note and purchase-money security agreements executed by Debtors on April 14, 2008, June 4, 2008, and June 30, 2008, respectively (the "Springfield Security Agreements"), which was perfected by the filing of UCC financing statements on April 16, 2008, June 5, 2008, and July 1, 2008, respectively (the "Springfield Financing Statements"). The Springfield Security Agreements and Springfield Financing Statements provide for a "purchase money security interest" in "21 holstien hiefers," "14 holstien cows," and "10 holstein heifers," respectively.

On May 21, 2012, the Court entered an Agreed Order for Relief from Stay as to Cattle in Debtors' underlying bankruptcy case (the "Agreed Stay Order") in which Debtors, Plaintiff, Defendant and the Chapter 12 Trustee all agreed that, among other things, "Agri-Max holds a properly-perfected security interest in all personal property of the Debtor, including the Debtor's cattle." The parties also agreed in the Agreed Stay Order that "Springfield holds a properly-perfected security interest in 45 head of cattle." The Agreed Stay Order provided that Plaintiff could liquidate the Cattle in a commercially reasonable manner and that Plaintiff's and Defendant's liens would attach to the proceeds of the sale "in their respective priorities." The Cattle were sold for a

total of $94,686,63 in proceeds (the "Sale Proceeds").

Discussion

Summary judgment is appropriate under Federal Rule of Bankruptcy Procedure 7056 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056; *Celotex Corp. v. 3 Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The parties do not dispute that Plaintiff is entitled to the proceeds from the sale of the 44 head of Cattle in which Defendant held no security interest. Although the parties do not identify which of the Cattle constituted those 44 head, as discussed further below, the Court concludes that Plaintiff is entitled to all of the Sale Proceeds and, therefore, the Court need not determine which portion of the Sale Proceeds should be attributed to which Cattle.

The Court concludes that Plaintiff held a perfected security interest in all of the Cattle and that, accordingly, its security interest attached to all of the Sale Proceeds. First, despite now appearing to dispute the issue,[1] Defendant stipulated in the Agreed Stay Order that Plaintiff held a "properly-perfected security interest in all personal property of the Debtor, including the Debtor's cattle." Second, even had Defendant not conceded the validity of Plaintiff's security interest in the Cattle, the collateral descriptions in the Agri-Max Security Agreement and Agri-Max Financing Statement clearly cover all of the Cattle. Plaintiff took a security interest in Debtors' "farm products," defined in KRS 355.9-102(ah) to include, among other things, "[l]ivestock, born or unborn...," as well as Debtors' "livestock." The reference to "cows and replacement young stock of all ages and breeds" following the phrase "including, but not limited to" simply serves as an illustration of the breadth of what is covered–it expressly does not limit the generality of "farm products" and "livestock."

The only remaining issue is whether Defendant's security interest has priority over Plaintiff's

---

[1] In its pleadings in this Adversary Proceeding, Defendant belatedly attempts to argue that Plaintiff's security interest did not attach to the particular Cattle covered by Defendant's security interest because the same did not constitute "cows and replacement young stock of all ages and breeds."

security interest under KRS 355.9-324, governing priority of purchase-money security interests. Under KRS 355.9-324(4), in order for a purchase-money security interest in "livestock that are farm products" to take priority over a conflicting security interest, the following requirements must all be met:

(a) The purchase-money security interest is perfected when the debtor receives possession of the livestock;
(b) The purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;
(c) The holder of the conflicting security interest receives the notification within six (6) months before the debtor receives possession of the livestock; and
(d) The notification states that the person sending the notification has or expects to acquire a purchase-money security interest in livestock of the debtor and describes the livestock.

KRS 355.9-324(4). *See also* KRS 355.9-322(1)(a).

Here, it is undisputed that Defendant never sent the "authenticated notification" required by KRS 355.9-324(4)(b). This by itself renders Defendant's security interest subordinate to Plaintiff's security interest in the Cattle, and, by extension, the proceeds of the sale of the Cattle.

## Conclusion

For the foregoing reasons, the Court concludes that Plaintiff is entitled to summary judgment and that its security interest has priority over Defendant's security interest. A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: August 27, 2013